1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  SHARON R. WOODEN
   Deputy Attorney General
6  State Bar No. 108709
    455 Golden Gate Avenue, Suite 11000
7   San Francisco, CA 94102-3664
    Telephone: (415) 703-5966
8  Fax: (415) 703-1234
    Email: sharon.wooden@doj.ca.gov
9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

14  **ANDRE TOLIVER,**                    C 07-2744 WHA (PR)

                              Petitioner,
15

16          **v.**

17  **A. J. MALFI, Warden,**

                              Respondent.
18

19  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO
20  PETITION FOR WRIT OF HABEAS CORPUS**

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | SHARON R. WOODEN
Deputy Attorney General
6 | State Bar No. 108709
455 Golden Gate Avenue, Suite 11000
7 | San Francisco, CA 94102-3664
Telephone: (415) 703-5966
8 | Fax: (415) 703-1234
Email: sharon.wooden@doj.ca.gov
9 | Attorneys for Respondent

10                 IN THE UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14 | **ANDRE TOLIVER,**                              C 07-2744 WHA (PR)

15 |                              Petitioner,   **MEMORANDUM OF POINTS
                                                AND AUTHORITIES IN
                                                SUPPORT OF ANSWER TO
                                                PETITION FOR WRIT OF
                                                HABEAS CORPUS**
16 |              **v.**

17 | **A. J. MALFI, Warden,**

                                 Respondent.
18

19

20                        **STATEMENT OF THE CASE**

21        Petitioner was sentenced to state prison for 45 years and four months after he was

22 convicted of six counts of armed robbery and prior conviction and firearm enhancements were found

23 true.   CT 216-221, 341, 371-377, 400-405.

24        Petitioner appealed to the California Court of Appeal.  On August 26, 2004, the Court of

25 Appeal affirmed the judgment.   Exh. 3.  Petitioner filed a Petition for Review in the California

26 Supreme Court, which was denied on November 10, 2004.  Petitioner filed two Petitions for Writ

27 of Habeas Corpus in the California Supreme Court.  They were denied on June 14, 2006 and

28

March 21, 2007.  Exh. 4.  Petitioner filed the instant Petition for Writ of Habeas Corpus on May 24, 2007.

### STATEMENT OF FACTS

**Counts One And Three—Round Table Pizza Robberies**

On August 1, 2000, Deborah lacy was working as the manager of the Round Table Pizza on Keller Avenue in Oakland.  At approximately 3:45 p.m., a man entered the restaurant and asked to use the restroom.  Lacy gave him the key and continued to work.  She was preparing a pizza when she noticed that the same man had approached and was standing next to her with a black gun pointed at her stomach.  The man told her to go to the back of the restaurant and open the safe.  She went with the man to the office in the back of the restaurant and told him that the safe was not there.  The man then demanded that she open the cash register at the front of the restaurant.  When she opened the cash register, he took the money.  The safe was across from the cash register and the man demanded that she open it.  Lacy opened the safe and gave the man the bag of money.  Approximately $300 was taken from the safe and over $200 was taken from the cash register.  The man told Lady and a coworker to lie down on the floor before fleeing the restaurant.  The man was wearing sunglasses and a straw hat.

At approximately noon on September 19, 2000, Lacy was working at Round Table Pizza and talking on the telephone with a coworker.  The same man who earlier robbed the restaurant approached the counter.  Lacy turned around and told her coworker on the telephone that she thought the man that robbed her was in the restaurant.  The man told her to hang up the telephone and pointed a gun at her.  He demanded that she open the cash register.  Lacy gave him the money from the cash register.  He then asked her to open the safe.  As Lacy was trying to open the safe, she heard a door shut.  A deliveryman had been in the restroom.  When she turned around, the robber was gone.  The robber was wearing sunglasses and a fishing hat.

Lacy identified defendant as the robber in a videotaped lineup on November 22, 2000.  Lacy testified that defendant appeared to be the robber in the lineup, except that he did not limp or have a beard during the robberies.  She therefore identified defendant with a question mark during

the lineup.  She identified defendant as the robber at both the preliminary hearing and at trial.  She noted that he looked different at the trial because he had no facial hair with the exception of a beard.

**Count Four—Round Table Pizza Robbery**[1/]

On September 23, 2000, Jimmy Verge was working on pizza dough in the back room of the Round Table Pizza on Grand Avenue in Oakland.  Verge had the back door of the restaurant propped open.  A man walked in and demanded money.  He pointed a gun at Verge and told Verge to take him to the cash register.  When they reached the cash register, the man removed the money from the cash register, put it in his pocket, and left the restaurant.  The man was wearing a tan fisherman hat.  At a lineup on November 30, 2000, Verge identified defendant as the robber with a question mark.  He testified that defendant appeared different at the lineup because he was shaven while at the robbery he had a full beard.  He also identified defendant as the robber at the preliminary hearing, but was unable to identify defendant at trial.  Verge testified that defendant appeared different than at the preliminary hearing in that he wore glasses, was lighter skinned, stockier and clean shaven at trial.  Verge admitted that he suffered a felony conviction for theft in 1994 and a felony conviction for domestic violence in 1998.

**Counts Two And Six—The RadioShack Robberies**

On September 12, 2000, Nakeesha Sanders was working as a sales clerk for RadioShack on Park Boulevard in Oakland.  At about 4:45 p.m., Sanders noticed a man walk into the store and approach the counter.  Sanders, who was behind the cash register, about a foot and a half from the counter, watched him for a few minutes because he looked like a close friend of hers.  She then realized that it was not her friend.  Hanoch Woldemanuel, another employee, assisted the man who asked to see one of the portable television sets.  Woldemanuel showed the man a portable television set and let him try it out while he assisted another customer.  Sanders also went to the rear of the store to assist another customer.  When Woldemanuel turned back to the man, the man pointed a gun at him.  Woldemanuel took out the money from the cash register, put it in a bag, and gave it to the man.  The man was wearing a floppy hat.  The man fled with the money and the television set.  After

---

1.  The jury acquitted petitioner on this count.

assisting the customer, Sanders returned to the register where Woldemanuel told her that the store had just been robbed.  Woldemanuel was unable to identify the robber at a lineup or at the preliminary hearing.

Sanders was also working at the store on the afternoon of November 1, 2000.  At about 2:10 p.m. she saw the same man who robbed the store in September enter the store.  She called 911, but was unable to speak to an operator because she was helping a rude customer.  She was about a foot away from the man who was at the counter.  She saw that he had a gun and noticed that Gennady Lobendze, the manager of the store, turned pale and backed away from the counter.  She heard the man say "quickly and quietly" and saw Lobendze place a portable television and money into a bag.  Sanders was certain that the man was the same man who robbed the store in September.  She noticed that he had a mole under the left eye.  He was wearing a dark blue baseball cap.

Sanders viewed a physical lineup on November 13.  She identified defendant in the lineup and at trial.  She was able to recognize him at trial due to "the mole, the birthmark on the left side of his face."  Sanders admitted that she suffered a misdemeanor conviction for theft in 1999 and that she was on probation.

Lobendze testified that he assisted a male customer on the afternoon of November 1.  The customer was interested in handheld television sets.  Lobendze removed one from under the counter and placed it on the counter.  The customer wanted to look at others so Lobendze took out four of the sets and placed them on the counter.  As he did so, the man reached into his shirt and pulled a gun out and pointed it at Lobendze.  The man said, "quietly but quickly" and pointed the gun towards the cash register.  Lobendze took the money from the cash register, put it in a bag, and gave it to the man.  As Lobendze was handing over the bag, the man put two of the four handheld television sets in the bag and pocketed the other two.  Lobendze identified defendant as the robber in a lineup, but was not 100 percent certain.  He also identified defendant as the robber at the preliminary hearing.  Lobendze was unable to identify defendant at the trial.  He testified that defendant appeared to be the person he identified at the preliminary hearing, but that he was now bald.

**Count Five—Chevron Robbery**

On October 10, 2000, Jeanette Brooks was working as the manager of the Chevron gas station on Lakeshore Avenue in Oakland. She was at the cash register in the booth at the station at approximately 6:30 p.m. when a car pulled into the station. The passenger in the car approached her and asked to use the bathroom. Brooks buzzed him in and the man entered the bathroom. About 15 to 20 minutes later, Brooks left the booth to check the water pump and supply the women's restroom. As she was returning to the booth, the same man approached her and pushed her in the left side with something silver and hard. He told her that he wanted all of the money. Brooks opened the cash register and gave him the money. The man was wearing a cream snap-down cap. He told Brooks to lie down on the floor before he fled. A security camera in the booth videotaped the robbery. The videotape was played for the jury. Brooks identified defendant as the robber in a lineup and at both the preliminary hearing and trial.

**Count Seven—Payless ShoeSource Robbery**

On November 9, 2000, Calvin Davis was working as a cashier for Payless ShoeSource on Telegraph Avenue in Oakland. At about 1:00 p.m., a man entered the store and went to the boot section. He subsequently approached the cash register with two pairs of boots. Davis rang up the sale, bagged up the boots, and told the man the price. The man then told him to "be cool about this" and pulled a gun out of his waistband and pointed it at Davis. The man walked behind the counter and demanded that Davis open the safe. Davis told him that it was a time dilation safe and would take 10 minutes to open. The man then asked him to open the register. Davis took the money out of the cash register with the exception of a $1 bill that was connected to a security camera. Davis placed the money in a bag and gave it to the man. The man saw the $1 bill remaining in the register and took it, causing the camera to take a picture of him. The man was wearing a dark blue or back baseball cap. The man took the bag of shoes and the money, told Davis to get in the back, and left the store. Davis identified defendant as the robber in a lineup on November 13, 2000. At the preliminary hearing, he thought defendant was the robber, but he was unsure because defendant was more clean shaven at the hearing. Davis was unable to identify the robber at trial. An expert in

1  latent print examination testified that a fingerprint found on a shoe box located next to the cash

2  register matched defendant's left middle finger.

3  **STANDARD OF REVIEW**

4        This case is governed by 28 U.S.C. § 2254 as revised by the AEDPA, which provides that

5  the federal court cannot grant habeas relief unless the state court's ruling "was contrary to, or

6  involved an unreasonable application of," clearly established United States Supreme Court law, 28

7  U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts, 28 U.S.C.

8  § 2254(d)(2). *Williams v. Taylor*, 529 U.S. 362, 411-413 (2000).

9  **ARGUMENT**

10  **I.**

11  **PETITIONER'S RIGHT TO COUNSEL WAS NOT VIOLATED BY THE
SEIZURE OF HIS CLOTHING AT THE TIME OF HIS ARREST**

12

13        Petitioner contends his right to counsel was violated when the police seized his clothing

14  at the police station.  Petition, 6.

15        Petitioner was arrested on November 10, 2000 at 4:37 a.m.  He was not arrested for the

16  charged robberies, but for assaulting a police officer and possession of narcotics.  A parole hold was

17  also placed on him.  RT 41, 72-73, 345.  Later that day, at approximately 3:00 p.m., Officer James

18  Beal attempted to interview petitioner.  At that time, officer Beal also recovered the clothing

19  petitioner was wearing.  RT 41, 86.  A live lineup was held three days later on November 13th, and

20  officer Beal had petitioner wear the clothes he was wearing at the time of his arrest.  RT 48-49, 82,

21  85-86.

22        When a person is taken into official custody and lawfully detained, the police may search

23  him incident to a custodial arrest.  *United States v. Edwards*, 415 U.S. 800, 802-803 (1974).  The

24  police are entitled to take from the suspect any evidence of the crime in his immediate possession,

25  including his clothing.  *Id.* at 804-805.  No constitutional right is violated when items of clothing

26  worn by the accused when arrested are inspected, tested, or used as evidence.  *Miller v. Eklund*, 364

27  F.2d 976, 978 (9th Cir. 1966); *United States v. Caruso*, 358 F.2d 184, 185 (2d Cir. 1966).

28

1    Petitioner contends the seizure of his clothing was improper because his clothes were

2 taken after he invoked his right to counsel. According to petitioner, the seizure of his clothing

3 violated his right to counsel. Petition, 6.

4    The Sixth Amendment guarantees a criminal defendant the right to have the assistance of

5 counsel for his defense. The Sixth Amendment is violated whenever the accused is denied counsel

6 at a critical stage of his trial. *United States v. Bohn*, 890 F.2d 1079, 1080 (9th Cir. 1989). The right

7 to counsel attaches "at or after the initiation of adversary judicial criminal proceedings - whether by

8 way of formal charge, preliminary hearing, indictment, information, or arraignment." *United*

9 *States v. Harrison*, 213 F.3d 1206, 1209 (9th Cir. 2000).

10    Attachment of the right alone does not guarantee a defendant the assistance of counsel.

11 He must also invoke the Sixth Amendment right by hiring a lawyer or asking for appointed counsel.[2]

12 *United States v. Harrison*, 213 F.3d at 1209. Attachment and invocation are distinct legal events.

13 *Id*. at 1209-1210.

14    The Sixth Amendment right to counsel is offense specific. It cannot be invoked once for

15 all future prosecutions, and it does not attach until a prosecution is commenced. *United States v.*

16 *Harrison*, 213 F.3d at 1210. As noted above, on the day of his arrest petitioner was in custody on

17 unrelated charges and a parole hold. He was not arrested or charged for the robberies, and criminal

18 proceedings had not yet begun. Thus, petitioner's right to counsel under the Sixth Amendment had

19 not yet attached.

20    Although petitioner invoked his right to counsel when the police attempted to interview

21 him (RT 41; Petition, 6), the Fifth Amendment right to counsel also does not assist him. Although

22 the Fifth Amendment right to counsel arises at custodial interrogations, a point which frequently

23 occurs earlier in the investigative sequence than adversarial judicial proceedings, "the Fifth

24 Amendment right to counsel is not an independent right; rather it stems from the privilege against

25 self-incrimination. Thus, the Fifth Amendment right to counsel only protects a defendant's privilege

26

27 _____

28    2. A defendant can waive the Sixth Amendment right to counsel and represent himself.
*Faretta v. California*, 422 U.S. 806, 835 (1975).

1  against making incriminating statements against himself." *Hall v. State*, 705 F.2d 283, 289 n.4 (8th

2  Cir. 1983); citations omitted.

3        When a suspect invokes his right to counsel, interrogation must cease. The suspect cannot

4  be subject to further interrogation without counsel present, unless the accused himself initiates

5  further conversations with the police. *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990); *Edwards v.*

6  *Arizona*, 451 U.S. 477, 484-485 (1981).

7        The key aspect of the rule is the prohibition on further interrogation. "Interrogation refers

8  not only to express questioning, but 'also to any words or actions on the part of the police (other than

9  those normally attendant to arrest and custody) that the police should know are reasonably likely to

10  elicit an incriminating response from the suspect.'" *Rhode Island v. Innis*, 446 U.S. 291, 300-301

11  (1980).

12        When the police seek consent to search after a defendant has requested counsel, the

13  defendant's right to counsel is not violated. Requests for consent to search are not the functional

14  equivalent of questioning. Moreover, consent to search is not testimonial or communicative in

15  nature, even if the consent leads to the discovery of incriminating evidence. Said evidence is "real

16  and physical, not testimonial." *Cody v. Solem*, 755 F.2d 1323, 1330 (8th Cir. 1985).

17        Similarly, Officer Beal's valid seizure of petitioner's clothes did not constitute

18  interrogation and was not the equivalent of further questioning. Also, the evidence elicited from the

19  seizure was real and physical, not testimonial.

20        Furthermore, even if counsel had been present and advised petitioner not to give the police

21  his clothes, the police were entitled to seize the clothing anyway incident to the custodial arrest.

22  *United States v. Edwards*, 415 U.S. at 804-805. Therefore, no violation of the right to counsel

23  occurred. *Schmerber v. California*, 384 U.S. 757, 765-766 (1966).

24        The challenged contact in this case, a valid seizure of petitioner's clothes at the time of

25  arrest, did not constitute interrogation or the functional equivalent of further questioning. Thus, the

26  seizure did not violate petitioner's right to counsel under the Fifth or Sixth Amendments to the

27  United States Constitution.

28

1    The California Supreme Court rejected petitioner's claim. Exh. 4. Since that decision was

2  not an objectively unreasonable application of federal law or an unreasonable determination of the

3  facts, petitioner's claim fails.

**II.**

**TRIAL AND APPELLATE COUNSEL WERE NOT INEFFECTIVE FOR FAILING TO CHALLENGE THE SEIZURE OF PETITIONER'S CLOTHING**

7    Petitioner contends trial and appellate counsel were ineffective for failing to challenge the

8  seizure of his clothing at the time of his arrest. Petition, 6.

9    To establish a violation of the constitutional right to effective assistance of counsel, a

10  defendant must show that (1) counsel's performance was deficient, and (2) counsel's deficient

11  representation subjected him to prejudice. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

12  Deficient performance is demonstrated by a showing that "counsel's representation fell below an

13  objective standard of reasonableness." *Id*. Prejudice is found where "there is a reasonable

14  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

15  been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine

16  confidence in the outcome." *Id*; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000). Further, for

17  a habeas petitioner to succeed, he must show that the state court applied *Strickland* to the facts of

18  his case in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698-699 (2002). Thus,

19  federal habeas review of a claim of ineffective assistance is "doubly deferential." *Yarborough v.

20  Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

21    The *Strickland* standards apply to appellate counsel as well as trial counsel. *Smith v.

22  Robbins*, 528 U.S. 259, 285 (2000); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). There

23  is no obligation to raise meritless arguments on a client's behalf. Nor is counsel deficient for failing

24  to raise a weak issue. *Strickland v. Washington,* 466 U.S. at 687-688; *Miller v. Keeney*, 882 F.2d

25  at 1434 & n.9.

26    The burden of proving ineffective assistance is on the defendant. *Strickland v.

27  Washington*, 466 U.S. at 694. Petitioner has failed to meet this burden. As argued above, the valid

28  seizure of petitioner's clothes at the time of arrest did not violate his right to counsel under the Fifth

1    or Sixth Amendments to the United States Constitution.  Thus, it is not reasonably probable that, but

2    for counsels' omission, petitioner would have prevailed at trial or on appeal.

3          The California Supreme Court rejected petitioner's claim.  Exh. 4.  Since that decision was

4    not an objectively unreasonable application of federal law or an unreasonable determination of the

5    facts, petitioner's claim fails.

6                                              **III.**

7    **PETITIONER  WAS  ARMED  WITH  A  FIREARM  DURING  THE**
      **ROBBERIES**

8

9          Petitioner contends there was not substantial evidence to support the jury's findings on

10   the gun use enhancements.  Specifically, petitioner argues an unloaded BB-gun was not dangerous

11   within the meaning of California Penal Code section 12022.53, subdivision (b).  Petition, 6A.

12         "Notwithstanding any other provision of law, any person who, in the commission of a

13   felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and

14   consecutive term of imprisonment in the state prison for 10 years."  The firearm need not be

15   operable or loaded for this enhancement to apply."  Cal. Pen. Code § 12022.53, subd. (b).  Robbery

16   is an applicable felony.  Cal. Pen. Code § 12022.53, subd. (a).

17         California Penal Code section 12022.53 did not require petitioner to use a dangerous

18   weapon.  It required that he personally use a firearm during the commission of the offense.  Firearm

19   is defined as "any device, designed to be used as a weapon, from which is expelled through a barrel,

20   a projectile by the force of any explosion or other form of combustion."  Cal. Pen. Code § 12001,

21   subd. (b).  A BB gun is a dangerous weapon but not a firearm.  *United States v. Burnett*, 16 F.3d 358,

22   360 (9th Cir. 1994).

23         During the multiple robberies in this case, petitioner pointed a gun at the head, chest,

24   and/or stomach of employees at Round Table Pizza, RadioShack, Chevron, and Payless Shoes.  RT

25   191-195, 228-232, 274-275, 287-294, 378, 398-410.  Petitioner used two different guns.  One was

26   a black semiautomatic, and the other was a silver nine millimeter pistol with a brown handle.  The

27   victim of the robbery at Payless Shoes specifically testified that the silver pistol was not a BB gun.

28   He knew petitioner's weapon was a real gun because of the length of the barrel.  The victim of the

1   robbery at Round Table Pizza testified that petitioner's gun was a black semiautomatic with a slide

2   which he cocked by pulling the "top of the gun back." She did not know whether it was a real gun

3   or a BB gun, but it "scared the hell" out of her. A RadioShack victim testified he could tell the

4   difference between a real gun and a BB gun, and petitioner's black semiautomatic looked like a real

5   gun. RT 194, 229, 252, 315-316, 318, 402, 409, 426. When a witness testifies that, based on their

6   familiarity with guns, the gun used in the crime looked real, that is sufficient to establish a

7   defendant's liability. *See People v. Jackson*, 92 Cal.App.3d 899, 902 (1979).

8        The test of whether the evidence was sufficient to support a conviction is "whether, after

9   viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

10   have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*,

11   443 U.S. 307, 319 (1979). A habeas petitioner bears a heavy burden when challenging the legal

12   sufficiency of his state criminal conviction. *Knapp v. Leonardo*, 46 F.3d 170, 178 (2d Cir. 1995).

13   A petitioner must also show that the state court's ruling was an unreasonable application of the

14   *Jackson* standard. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Since the evidence in this

15   case established that petitioner used a firearm during the commission of the offenses as that term is

16   defined by California law, the evidence at trial was sufficient to support the jury's finding that the

17   firearm allegations were true. CT 371-377.

18        The California Supreme Court rejected petitioner's claim. Exh. 4. Since that decision was

19   not an objectively unreasonable application of federal law or an unreasonable determination of the

20   facts, petitioner's claim fails.

21        **IV.**

22   **THE TRIAL COURT PROPERLY DENIED PETITIONER'S MOTIONS**
23   **TO REPRESENT HIMSELF**

24        Petitioner contends the trial court violated his right to represent himself at trial. Petition,

25   6A.

26        A defendant has a constitutional right under the Sixth Amendment to proceed pro se.

27   *Faretta v. United States*, 422 U.S. 806, 832 (1975). However, in order to invoke the Sixth

28   Amendment right to self-representation, the request must be: (1) knowing and intelligent, and (2)

1  unequivocal. *Hendricks v. Zenon*, 993 F.2d 664, 669 (9th Cir. 1993). The right of self-

2  representation is waived if it is not timely and unequivocally asserted. *Jackson v. Ylst*, 921 F.2d 882,

3  888 (9th Cir. 1990).

4  On November 26, 2001, defense counsel told the court that petitioner wanted to request

5  an opportunity to represent himself if his offer to resolve the case was rejected. Defense counsel

6  also relayed petitioner's request to reduce his bail so that he could take care of his ailing mother. The

7  court asked petitioner if he wanted to fire his attorney and represent himself. The court told

8  petitioner it could not rule on anything else until the issue of representation was resolved. The court

9  advised petitioner not to fire his attorney. Petitioner's response was vague, but it appears that what

10 he wanted depended on whether his requests were granted.[3/] The court told petitioner that it did not

11 work that way; one was not dependent upon the other. The court again told petitioner that

12 representing himself was not a good idea. When told this was a career criminal case, the court told

13 petitioner that it was a very bad idea. Petitioner conferred with his attorney at that point, and

14 nothing more was reported during the court session. RT [November 26, 2001] 1-2. The minute

15 order from that date indicates petitioner's motion to reduce bail was denied. CT 228.

16 On January 28, 2002, petitioner filed a written pro per *Marsden* motion.[4/] CT 229-237.

17 The court asked petitioner why he wanted to replace his attorney. Petitioner told the court that he

18 and defense counsel did not agree on anything and did not get along. Also, defense counsel told the

19 court that petitioner was willing to plead guilty to all of the crimes, but that was not true.

20 Furthermore, defense counsel had not filed any motions. Petitioner wanted counsel to file a Penal

21 Code section 995 motion, but counsel had not filed such a motion. Petitioner also wanted counsel

22 to file a motion to suppress witness identification, but the court advised petitioner that such a motion

23 is filed at trial. RT [January 28, 2002] 3-5.

24

25
_____

26     3. In response to the court's question as to whether he wanted to represent himself and the
       court's advice not to fire his attorney, petitioner said, "Yes, I could get what he just relayed to you
27     taken care of. No." RT [November 26, 2001] 1-2.

28     4. *People v. Marsden*, 2 Cal.3d 118 (1970).

Mem. of P.'s & A.'s in Supp. of Ans. to Pet. for Writ of Hab. Corpus - *Toliver v. Malfi, Warden* - C 07-2744 WHA (PR)

Defense counsel told the court that petitioner was willing to plead guilty on two of the robberies but not all of them. However, the prosecution was unwilling to dismiss any of the charges. During the plea negotiations, defense counsel asked the court to give an indicated sentence if petitioner pled guilty to all charges. The court gave an indicated sentence of 26 years, 8 months, which would be the sentence for two armed robberies served consecutively. The sentence on the remaining charges would be served concurrently. Defense counsel presented petitioner's offer, which would have been a plea involving probation and a drug program, but that was rejected by the court and prosecutor. RT [January 28, 2002] 5-8.

As to a Penal Code section 995 motion, petitioner asked counsel to make that motion before the preliminary hearing. After the preliminary hearing, two robberies were discharged. After reviewing the preliminary hearing transcript, counsel did not believe a 995 motion would be successful. Counsel intended to make a motion to suppress identification at trial. RT [January 28, 2002] 8-9.

Petitioner then told the court that he did not trust defense counsel. There was no attorney-client confidence at all. He also told the court that he was hoping counsel could work with him. However, he gave counsel information about someone else who actually committed the robberies, and counsel failed to follow up on it. Counsel responded that a couple of people were arrested in connection with the robberies, but they were not identified in photo lineups. Petitioner, on the other hand, was identified either positively or tentatively by all of the people he was charged with robbing. Counsel's investigator had retired, and a new defense investigator was going to follow up on the fact that other robberies may have had similar m.o.'s to the robberies petitioner was charged with committing. RT [January 28, 2002] 9-11.

Defense counsel thought that part of the problem was that petitioner made certain requests that counsel could not help him with, at least not without more information. For example, petitioner wanted his bail reduced, but counsel knew such a motion would be unsuccessful without a change of circumstances. When petitioner told counsel his mother was ill, counsel asked for confirmation or at least a doctor's name. Petitioner did not provide counsel with that information, and counsel could not really help him. RT [January 28, 2002] 11-13.

1     The court denied petitioner's motion. Petitioner was constitutionally entitled to conflict-

2   free competent representation. The court did not see any conflict, and petitioner had received

3   competent representation. Also, a defense investigator was going to follow up on the possibility that

4   someone else was responsible for the robberies. The court encouraged petitioner and counsel to

5   continue to work together and cooperate with each other. RT [January 28, 2002] 15-16.

6     On November 14, 2002, petitioner filed another written pro per *Marsden* motion. CT 255-

7   262. In his written motion, petitioner complained that counsel had not helped him in any way, had

8   not talked to him since the last court appearance in June, and had refused to file any motions. At

9   the hearing, petitioner further complained that counsel was trying to persuade him to take a 30-year

10   deal or risk 60 years in prison. Also, counsel had not provided petitioner with a copy of the search

11   warrant, or tried to get the lineup identification suppressed. Petitioner told the court he wanted a

12   lawyer who would actually defend his case, not one who tried to get him a deal. Counsel did not

13   help him get released when his father died or when his mother became ill. RT [November 14, 2002]

14   1-8.

15     Counsel told the court that this was a serial robbery case. Petitioner had initially been

16   identified on a videotape of a robbery by a patrol officer who had come in contact with him. Seven

17   witnesses had positively or tentatively identified petitioner as the robber. Counsel intended to

18   pursue a lineup suppression motion at trial. Counsel had asked the prosecution for copies of any

19   search warrants in the case, or any paperwork concerning property or clothing taken from petitioner

20   and placed into evidence. Counsel had also filed a *Pitchess*[5] motion on two officers based on

21   petitioner's claim that inappropriate communication occurred at the lineup. No such paperwork had

22   been provided and counsel did not believe it existed. Counsel had instructed his investigator to

23   speak with petitioner about any alibi witnesses, and had informed petitioner that he needed to prove

24   changed circumstances to get his bail reduced. Counsel was willing to help petitioner attend the

25   funeral when his father died, but petitioner failed to provide the information needed to obtain a

26   court-ordered release and escort to the funeral. RT [November 14, 2002] 9-14.

27

28     5. *Pitchess v. Superior Court*, 11 Cal.3d 531 (1974).

1    The court denied petitioner's motion.  In the court's opinion, petitioner did not like all of

2   the evidence against him.  Petitioner wanted his lawyer to "spin his wheels" on things that were

3   pointless, and file frivolous motions on his behalf.  Counsel had no duty to do that.  The court

4   advised petitioner to cooperate with his attorney, and trust that counsel knew more about the law

5   than petitioner.  RT [November 14, 2002] 14-15.

6    On January 13, 2003, the day the case was set for trial, petitioner filed a third written pro

7   per *Marsden* motion.  CT 265-273.  Petitioner again complained that counsel had not done anything

8   for him.  Counsel did not come to see petitioner in jail, and did not return petitioner's telephone

9   calls.  Counsel also had not investigated any of the things petitioner had asked him to investigate

10  over the past year.  Petitioner showed the court a newspaper clipping, and claimed that counsel

11  offered him the opportunity to kill a witness against him.  RT [January 13, 2003] 4-6.  Counsel

12  responded that he had attempted to negotiate petitioner's case, and made a bail request on his behalf.

13  He had seen petitioner at the jail, but not since the previous *Marsden* motion in November 2002.

14  Counsel could not return petitioner's telephone calls from the jail.  His investigator had attempted

15  to talk to petitioner, and had investigated a potential mistaken identity defense.  Counsel also told

16  the court that he had another client who had a case where a witness was killed, but the witness'

17  family had filed suit against the city not counsel.  RT [January 13, 2003] 7-8.

18   The court noted the case was in her courtroom for a jury trial, and asked petitioner if he

19  wanted a court trial.  Petitioner said no.  The court denied petitioner's *Marsden* motion because he

20  did not present good cause to relieve defense counsel as his attorney.  RT [January 13, 2003] 8.

21   When the court denied petitioner's *Marsden* motion, petitioner immediately responded,

22  "then I want to go pro per then, ma'am."  The court told petitioner he faced serious charges, and his

23  counsel was prepared to represent him at the trial.  The court advised petitioner that it would be to

24  his benefit to keep counsel as his attorney.  Petitioner told the court that counsel was not trying to

25  help him.  Even if he was guilty, he would not take counsel's offer of 30 years in prison.  RT

26  [January 13, 2003] 10.  Counsel told the court that he had tried to explain petitioner's sentencing

27  options, but petitioner did not want to hear them.  Petitioner was unwilling to accept that he was not

28  eligible for probation or a drug program.  Petitioner did not want to believe his options were so

1   limited, and wanted deals that other inmates had received.  However, petitioner stood accused of

2   multiple counts of armed robbery and had a strike prior, and could not get an offer of less than 26

3   years.  Since counsel had failed to get him the deal he wanted, petitioner had constantly accused

4   counsel of being in cahoots with the prosecution and not being willing to fight for him.     RT

5   [January 13, 2003] 10-12.

6        The court took petitioner's request for self-representation under advisement until the next

7   court hearing.  RT [January 13, 2003] 12.  The court briefly discussed the trial schedule and defense

8   motions with defense counsel and the prosecutor before adjourning matter until January 16, 2003.

9   RT 14-15.

10       On January 16, 2003, the court received 15 motions from the defense, including a motion

11  to suppress witness identifications.  Before a discussion on the motions, defense counsel informed

12  the court that petitioner still wanted to represent himself.  RT 19.  The court noted for the record that

13  the case had been sent to her courtroom for trial on January 13, 2003.  The trial would have begun,

14  and a panel of jurors would have been called, but defense counsel had a medical situation that

15  prevented the trial from starting in earnest before January 16, 2003.  RT 19-20.  The court asked

16  petitioner if he still wanted to represent himself.  Petitioner answered he did if he could not get

17  another attorney.  Petitioner tried to renew his complaints about defense counsel, but the court

18  reminded petitioner that his *Marsden* motion had already been denied.  RT 20-21.

19       The court denied petitioner's request to represent himself for two reasons.  First, the

20  request was untimely in light of the fact that it was made on the eve of trial.  Second, it was not an

21  unequivocal request because it was made immediately after the court denied petitioner's *Marsden*

22  motion.  The court cited the cases of *People v. Scott*, 91 Cal.App.4th 1197 (2001) and *People v.*

23  *Windham*, 19 Cal.3d 121 (1977), in support of its ruling.  RT 20-22.

24       After his request to represent himself was denied, petitioner asked for a 90 day

25  continuance to see if he could hire private counsel.  That request was also denied as untimely.  The

26  court noted this was a 2000 case, and that petitioner had been in court on the case many times over

27  the years.  Petitioner had "plenty of time" to ask to represent himself or get a lawyer.  RT 22-23.

28

Mem. of P.'s & A.'s in Supp. of Ans. to Pet. for Writ of Hab. Corpus - *Toliver v. Malfi, Warden* - C 07-2744 WHA (PR)

1       The California Court of Appeal ruled the trial court properly denied petitioner's *Faretta*

2   motions because both requests were equivocal:

3           Defendant did not make an unequivocal request for self-representation at the November
        26, 2001 hearing, but rather conditioned his request on whether his counteroffer to resolve
4       the case was rejected. Moreover, the record indicates that defendant also requested a bail
        reduction at this hearing and that he was under the impression that his request was
5       intertwined with his motion for self-representation. The following colloquy occurred after
        defense counsel relayed both defendant's requests for self-representation and bail
6       reduction: "[The Court]: Well, first things first, Mr. Toliver. Do you want to fire Mr.
        Sherrer and represent yourself?  I can't, you know, once that comes up, I can't rule on
7       anything else unless that issue is resolved first.  I'd advise you not to do that. [¶]
        [Defendant]: Yes, I could get what he just relayed to you taken care of. No. [¶] [The
8       Court]: One is not dependent on the other, Mr. Toliver.  It's not 'I'll represent myself if
        you reduce my bail.'  They're all independent of each other.  And representing yourself
9       is simply not a good idea. [¶]  Is this a career case? [¶]  [Deputy District Attorney]: Yes
        it is, Your Honor."  The court then strongly advised defendant not to represent himself.
10      The hearing was concluded after defendant conferred with counsel.  Thus, the record
        reflects that defendant did not unequivocally assert his right to self-representation. On the
11      contrary, it appears that defendant made an initial request conditioned on the prosecutor's
        acceptance of his counteroffer and the court's ruling on his bail motion, and failed to
12      renew his request after the court informed him that the motions were not interdependent
        and after he had consulted with his counsel on the issues.  On this record, defendant did
13      not "'articulately and unmistakably'" invoke his *Faretta* right.  [*People v. Marshall*, 15
        Cal.4th 1, 21, quoting *United States v. Weisz*, 718 F.2d 413, 426 (D.C. Cir 1983)].

14

15  Exh. 3 at 9.

16      The Court of Appeal's opinion was reasonable.  Petitioner did not unequivocally assert

17  his right to self-representation.  He wanted to request an opportunity to represent himself *if* his offer

18  to resolve the case was rejected.  The *Faretta* request was impulsive and ambivalent, made

19  immediately after the denial of his *Marsden* motion.   Petitioner was required to make an articulate

20  and unmistakable demand for self-representation.  His conditional request was not an unequivocal

21  assertion.  *Jackson v. Ylst*, 921 F.3d 882, 888-889 (9th Cir. 1990) (request not unequivocal where

22  it was "an impulsive response to the trial court's denial of his request for substitute counsel," and

23  thus showed that defendant wanted to be represented by a different attorney, not that he in fact

24  wished to represent himself); *see United States v. McKenna*, 327 F.3d 830, 844 (9th Cir. 2003)

25  (defendant's statement that she "preferred" to represent herself not unequivocal request); *Lacy v.*

26  *Lewis*, 123 F.Supp.2d 533, 548 (C.D. Cal. 2000) (request for self-representation made after *Marsden*

27  motion was denied was "an impulsive and angry reaction to perceived deficiencies in his

28  representation by trial counsel" and not unequivocal).

Mem. of P.'s & A.'s in Supp. of Ans. to Pet. for Writ of Hab. Corpus - *Toliver v. Malfi, Warden* - C 07-2744 WHA (PR)

1      After noting the factors to be considered in assessing a *Faretta* motion after trial has

2 commenced (the quality of counsel's representation of the defendant, the defendant's prior proclivity

3 to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the

4 disruption or delay which might be reasonably be expected to follow the granting of such a motion),

5 the California Court of Appeal found the record also fully supported the trial court's decision to

6 deny petitioner's second *Faretta* motion:

7      Defendant's motion was untimely and equivocal. He waited until the first day of
       trial to make the motion and only made the motion when the trial court denied his
8      *Marsden* request. He then renewed his *Marsden* request after the trial court took his
       *Faretta* motion under advisement and again made an equivocal request for self-
9      representation when he responded to the court's inquiry as to whether he wished to
       represent himself: "*If* I can't get another attorney, yes." (Italics added.) As the trial court
10     found, the motion was untimely, the case had been pending since 2000, and the request
       was not unequivocal, but made in response to the court's denial of his *Marsden* motion.
11     (See *People v. Valdez* (2004) 32 Cal.4th 73, 102 [*Faretta* motion made on date jury trial
       to commence untimely]; *People v. Scott* (2001) 91 Cal.App.4th 1197, 1205 [trial court did
12     not err in denying equivocal *Faretta* motion made by defendant just prior to the start of
       trial and out of frustration at having *Marsden* motion denied.

13

14 Exh. 3 at 10.

15      The Court of Appeal's opinion on this point was reasonable. Petitioner did not make a

16 timely assertion of his *Faretta* right. The motion was made the day the case was set for trial. In

17 *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005), the Ninth Circuit noted that *Faretta* "may

18 be read to require a court to grant a *Faretta* request when the request occurs 'weeks before trial.'

19 However, the holding does not define when such a request would become untimely." *Id*. at 1061.

20 "Because the Supreme Court has not clearly established when a *Faretta* request is untimely, other

21 courts are free to do so as long as their standards comport with the Supreme Court's holding that a

22 request 'weeks before trial' is timely." *Id*. In *Marshall,* the state appellate court had found that a

23 *Faretta* request made on the morning of trial was untimely. The Ninth Circuit held that because that

24 request fell well inside the "weeks before trial" standard established by *Faretta*, the state court's

25 finding of untimeliness was not contrary to Supreme Court precedent. *Id*. Likewise, in this case the

26 denial as untimely of a motion for self-representation made on the day of trial was not unreasonable.

27      The California Supreme Court rejected petitioner's claim. Exh. 4. Since that decision was

28

Mem. of P.'s & A.'s in Supp. of Ans. to Pet. for Writ of Hab. Corpus - *Toliver v. Malfi, Warden* - C 07-2744 WHA (PR)

1  not an objectively unreasonable application of federal law or an unreasonable determination of the

2  facts, petitioner's claim fails.

3                                          **V.**

4  **THE COURT PROPERLY DENIED PETITIONER'S MOTION TO
   SUPPRESS THE LINEUP IDENTIFICATION**

5

6         Petitioner contends he was denied his right to due process when the trial court denied his

7  motion to suppress the lineup identification on count VII, the Payless Shoes robbery.  Petition, 6A-

8  6B.

9         Due process protects against the admission of evidence deriving from suggestive pretrial

10 identification procedures.  *Neil v. Biggers*, 409 U.S. 188, 196.  An identification procedure is

11 impermissibly suggestive when it emphasizes the focus upon a single individual, thereby increasing

12 the likelihood of misidentification.  *Simmons v. United States*, 390 U.S. 377, 382-383 (1968).

13        Before the trial began, defense counsel moved to suppress the identification evidence.

14 Sergeant James Beal testified that he conducted a physical lineup on November 13, 2000 at the

15 Oakland police department.  Before the lineup, Beal had petitioner change into the clothes he had

16 been wearing at the time of his arrest, denim jeans and a denim jacket.  RT 47-49, 95.

17        There were 20 witnesses representing 12 different robberies at the lineup.  Beal explained

18 what was going to occur and their responsibilities as witnesses.  Specifically, he explained that they

19 were not to engage each other in conversation, and that they were to wait until the lineup was over

20 before making a decision.  Beal read the instructions on the lineup cards verbatim.  All of the

21 witnesses understood the instructions.  RT 49-51, 97.  Beal videotaped the lineup.  RT 52.

22        During the lineup, petitioner walked with a limp as he followed Beal's instructions.

23 Petitioner also favored his left arm during the lineup.  RT 73.

24        On November 9, 2000, there was a robbery at a Payless Shoes Source store in Oakland.

25 The jacket petitioner wore at the time of his arrest and at the lineup was different than the jacket

26 described in the Payless Shoes Source robbery report.  RT 82-83.  Petitioner wore a black jacket

27 during the Payless Shoes Source robbery (RT 80) and a denim jacket at the time of his arrest.  RT

28 49.

1        Petitioner also wore a pair of jeans at the lineup with a "Sean Jean" insignia on the right

2   leg. The victim of the Payless robbery, Calvin Davis, recalled that the robber wore a jean outfit with

3   "Sean Jean" written on the right-hand leg of the pants.  RT 297, 319.

4        The trial court denied the defense motion to suppress the lineup identification.

5   Specifically, the court found that the lineup was not so "impermissibly suggestive so as to give rise

6   to a very substantial likelihood of irreparable misidentification."  The court made its decision after

7   watching the videotape of the lineup.  RT 104-105.

8        The California Court of Appeal ruled the trial court properly denied the motion to

9   suppress the lineup identification:

10          While requiring defendant to wear the jeans with the distinctive logo during the lineup did
            not result in the ideal procedure, the lineup was not unnecessarily suggestive.  Davis, who
11          was robbed at the Payless Shoe Source store just four days prior to the lineup, testified
            that he was certain that defendant was the man who robbed him when he selected him in
12          the lineup.  "Everything was familiar to me.  The clothes he was wearing, the baseball
            cap.  The way he stands.  The way his facial appearance was.  Everything.  Besides, he
13          walked with a limp, which he didn't actually do.  Like he was trying too hard to limp at
            that time."  In fact, Davis testified that he recognized defendant as the robber immediately
14          as he was walking towards his position in the lineup, before he stopped and turned to face
            the audience.  In sum, Davis's identification of defendant was not based solely on the
15          distinctive clothing; defendant has failed to prove that the lineup was unduly suggestive.
            (See *People v. Harris* (1971) 18 Cal.App.3d 1, 5-6 ["The mere fact that defendant was
16          wearing the same color pants worn by the robber did not make the lineup unfair"];
            *People v. McDaniels* (1972) 25 Cal.App.3d 708, 711-712 [same].)

17

18   Exh. 3 at 12-13.

19        The California Court of Appeal's opinion was reasonable.  Although Davis recognized

20   petitioner's clothing, his identification was based on more than clothing.  Petitioner's face was the

21   face of the robber, and Davis had no doubt whatsoever.

22        Reliability is the critical factor in determining the admissibility of identification testimony.

23   Thus, even if an identification procedure was unduly suggestive, so long as the identification was

24   still reliable then no due process violation occurred.  *Manson v. Brathwaite*, 432 U.S. 98, 114

25   (1977).

26        Davis's identification was reliable.  To determine whether in-court identification

27   testimony is sufficiently reliable, courts consider five factors:  (1) the witness' opportunity to view

28   the defendant at the time of the incident; (2) the witness' degree of attention; (3) the accuracy of the

witness' prior description; (4) the level of certainty demonstrated by the witness at the time of the identification procedure; and (5) the length of time between the incident and the identification. *Manson v. Brathwaite*, 432 U.S. at 114.

Davis saw petitioner's features for at least 5 minutes during the robbery. Although petitioner pointed a gun at his face, Davis felt calm. He did not focus on the firearm and did not feel that his life was in danger. He believed that if he did what petitioner asked him to do, he would be safe.[6] Also, that was not the first time Davis laid eyes on petitioner. Davis recognized petitioner as a man he had seen in an Oakland barbershop three or four months before the robbery. Davis' prior description of petitioner was that he was a black man, 22 to 24 years old, 6 foot one to 6 foot two inches tall, 160 to 170 pounds, black hair, brown eyes, medium complexion with a moustache and goatee. At the time of the lineup, petitioner was listed as a light-skinned black male, 34 years old, six feet one inches tall, weighing 155 pounds. Petitioner also had a moustache and goatee and a day's worth of stubble on his face. RT 75-76, 89, 293, 319, 322, 329. Although Davis was wrong about petitioner's age and complexion, he gave an accurate description of petitioner's physical characteristics.

The lineup took place four days after the robbery when the victim's memory was fresh. Davis immediately recognized petitioner. Davis was absolutely certain petitioner was the robber; he had "no doubt whatsoever." RT 301-302, 335.

The California Supreme Court rejected petitioner's claim. Exh. 4. Since that decision was not an objectively unreasonable application of federal law or an unreasonable determination of the facts, petitioner's claim fails.

---

6. Davis was calm enough to remember to leave a special one dollar bill in the register so that petitioner would activate the security camera when he grabbed it. The camera took a picture of petitioner. (RT 293-294.)

1

## VI.

2

**TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO MAKE A SEVERANCE MOTION**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2          Petitioner contends trial counsel was ineffective for failing to bring a motion to sever the

3  charged counts.  Petition, 6B.

4          As noted above, to establish a violation of the constitutional right to effective assistance of

5  counsel, a defendant must show that (1) counsel's performance was deficient, and (2) counsel's

6  deficient representation subjected him to prejudice.  *Strickland v. Washington,* 466 U.S. at  687.

7  Deficient performance is demonstrated by a showing that "counsel's representation fell below an

8  objective standard of reasonableness," and prejudice is found where "there is a reasonable

9  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

10  been different."  The reasonable probability must be sufficient to undermine confidence in the

11  outcome.  *Id.* at 687, 694; *Laboa v. Calderon*, 224 F.3d at 981.

12          Petitioner was charged with seven counts of armed robbery.  Counts I and III pertained

13  to the Round Table Pizza robberies on August 1 and September 19, 2000.  Counts II and VI

14  pertained to the RadioShack robberies on September 12 and November 1, 2000.  Count IV pertained

15  to the Round Table Pizza robbery on September 23, 2000, count V pertained to the Chevron robbery

16  on October 10, 2000, and count VII pertained to the Payless Shoes robbery on November 9, 2000.

17  CT 216-221.

18          California Penal Code section 954 permits consolidation for trial of two or more offenses of

19  the same class of crime.  There is no question that the seven robberies charged in this case were the

20  same class of crime.

21          The California Court of Appeal was not persuaded that trial counsel was ineffective for

22  failing to bring a severance motion:

23          [D]efendant acknowledges that the Radio Shack robberies were properly consolidated but
           argues that since they were strong cases, they should not have been tried with the Round
24          Table Pizza robberies where the identification evidence was weak.  And, he asserts that
           even if these four counts were properly joined, consolidating them with the remaining
25          three counts, which did not have dates, places or victims in common, was prejudicial.

26          Contrary to defendant's argument, the evidence on the joined offenses here was cross-
           admissible to prove identity.  "Other-crimes evidence is admissible to prove the
27          defendant's identity as the perpetrator of another alleged offense on the basis of
           similarity" when the marks common to the charged and uncharged offenses, considered
28          singly or in combination, logically operate to set the charged and uncharged offenses apart

from other crimes of the same general variety and, in so doing, tend to suggest the perpetrator of the uncharged offenses was the perpetrator of the charged offenses. [Citation.]" (*People v. Walker* (1988) 47 Cal.3d 605, 622.) "The inference of identity, moreover, need not depend on one or more unique or nearly unique common features; features of substantial but lesser distinctiveness may yield a distinctive combination when considered together." (*People v. Miller* (1990) 50 Cal.3d 954, 987 (*Miller*).) The court in *Miller* also noted that "the likelihood of a particular group of geographically proximate crimes being unrelated diminishes as those crimes are found to share more and more common characteristics." (*Id.* at 989.)

The robberies charged here were sufficiently similar and distinctive to make them cross-admissible. With the exception of the Payless Shoe Source robbery on Telegraph Avenue in Oakland, the other robberies of similar businesses occurred in the same general vicinity of Oakland during a three-month period. Although in the Chevron robbery, the perpetrator wore a cream "snap-down" cap and the employee did not see the gun - the perpetrator pushed her in her left side with something silver and hard - the perpetrator in the other robberies pointed a gun at one of the employees in each of the businesses, demanded money from the cash register and wore a distinctive hat described as a fishing or floppy hat or straw hat in several of the robberies and a blue baseball cap in two of the other robberies. Here, the robberies contained so many common factors that the police labeled the perpetrator the "Fisherman Hat" bandit. Since the evidence of each of the robberies would have been cross-admissible to prove identity, defense counsel was not ineffective in failing to move to sever the counts.

Exh. 3 at 13-14.

The evidence for each count was strong, cross-admissible, and equally inflammatory. The jury had no reason to aggregate weak charges with strong, unrelated, and highly inflammatory charges in order to convict on all counts. Since the robbery counts were properly joined, trial counsel was not required to make a futile severance motion on petitioner's behalf. Moreover, since it is not reasonably probable that the result of the proceeding would have been different if a severance motion had been made, petitioner cannot establish prejudice. *Laboa v. Calderon*, 224 F.3d at 981; *see Park v. California*, 202 F.3d 1146, 1150 (9th Cir. 2000) (defendant could not show consolidation of counts was unfair because jury acquitted on some counts).

The California Supreme Court rejected petitioner's claim. Exh. 4. Since that decision was not an objectively unreasonable application of federal law or an unreasonable determination of the facts, petitioner's claim fails.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII.

## TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO CHALLENGE THE THREE STRIKES LAW

1

2      Petitioner contends trial counsel was ineffective for failing to challenge the Three Strikes

3  Law.  Petitioner also complains counsel did not seek to have his second strike stricken.  Petition, 6B.

4      First, California's Three Strikes Law is constitutional, and a challenge by defense counsel

5  would have been futile.  *Ewing v. California*, 538 U.S. 11, 20 (2003).  Trial counsel was not required

6  to make a futile motion on petitioner's behalf.  *Strickland v. Washington,* 466 U.S. at 687-688;

7  *Miller v. Keeney*, 882 F.2d at 1434 & n.9.

8      Second, defense counsel asked the court to strike the prior.[7/]  Counsel filed a written motion

9  and argued the point at the time of sentencing.  CT 1-5;  RT 757-760, 765-766.  The trial court

10  declined to strike the prior (RT 771), and petitioner cannot demonstrate that he was prejudiced by

11  any omission or deficient performance from counsel.  *Strickland v. Washington,* 466 U.S. at 694.

12  A retrospective difference of opinion as to trial tactics does not constitute denial of effective

13  assistance.  *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981); *Bashor v. Risley*, 730 F.2d

14  1228, 1241 (9th Cir. 1984).  Petitioner's claim fails.

15

16

17

18

19

20

21

22

23

24

25

26

27

28      7.  Although petitioner complains that counsel did not move to strike his "second" prior, he
only had one strike prior.  RT 766.

1

## CONCLUSION

2      Accordingly, respondent respectfully requests that the judgment be affirmed.

3      Dated:  August 22, 2007

4                   Respectfully submitted,

5                   EDMUND G. BROWN JR.
Attorney General of the State of California

6                   DANE R. GILLETTE
Chief Assistant Attorney General

7

8                   GERALD A. ENGLER
Senior Assistant Attorney General

9                   PEGGY S. RUFFRA
Supervising Deputy Attorney General

10

11                   /s/ Sharon R. Wooden
SHARON R. WOODEN

12                   Deputy Attorney General

                  Attorneys for Respondent

13

14 SRW/srw/lls
SF2007401456

15 20101655.wpd

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    STATEMENT OF THE CASE                                                              1

4    STATEMENT OF FACTS                                                                 2

5            Counts One And Three—Round Table Pizza Robberies                          2

6            Count Four—Round Table Pizza Robbery                                       3

7            Counts Two And Six—The RadioShack Robberies                                3

8            Count Five—Chevron Robbery                                                 5

9            Count Seven—Payless ShoeSource Robbery                                     5

10   STANDARD OF REVIEW                                                                 6

11   ARGUMENT                                                                           6

12           I.    PETITIONER'S RIGHT TO COUNSEL WAS NOT VIOLATED
                   BY THE SEIZURE OF HIS CLOTHING AT THE TIME OF HIS
13                 ARREST                                                               6

14          II.    TRIAL   AND   APPELLATE   COUNSEL   WERE   NOT
                   INEFFECTIVE   FOR   FAILING   TO   CHALLENGE   THE
15                 SEIZURE OF PETITIONER'S CLOTHING                                     9

16         III.    PETITIONER WAS ARMED WITH A FIREARM DURING THE
                   ROBBERIES                                                            10

17

18          IV.    THE TRIAL COURT PROPERLY DENIED PETITIONER'S
                   MOTIONS TO REPRESENT HIMSELF                                         11

19          V.     THE COURT PROPERLY DENIED PETITIONER'S MOTION
                   TO SUPPRESS THE LINEUP IDENTIFICATION                                19

20

21          VI.    TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO
                   MAKE A SEVERANCE MOTION                                              21

22         VII.    TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO
                   CHALLENGE THE THREE STRIKES LAW                                      23

23

     CONCLUSION                                                                         25
24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4   *Bashor v. Risley*
    730 F.2d 1228 (9th Cir. 1984)      24

5

  *Bell v. Cone*
6   535 U.S. 685 (2002)      9

7   *Cody v. Solem*
    755 F.2d 1323 (8th Cir. 1985)      8

8

  *Edwards v. Arizona*
9   451 U.S. 477 (1981)      8

10   *Ewing v. California*
    538 U.S. 11 (2003)      23

11

  *Faretta v. California*
12   422 U.S. 806 (1975)      7

13   *Faretta v. United States*
    422 U.S. 806 (1975)      11

14

  *Hall v. State*
15   705 F.2d 283 (8th Cir. 1983)      8

16   *Hendricks v. Zenon*
    993 F.2d 664 (9th Cir. 1993)      12

17

  *Jackson v. Virginia*
18   443 U.S. 307 (1979)      11

19   *Jackson v. Ylst*
    921 F.2d 882 (9th Cir. 1990)      12

20

  *Jackson v. Ylst*
21   921 F.3d 882 (9th Cir. 1990)      17

22   *Juan H. v. Allen*
    408  F.3d 1262 (9th Cir. 2005)      11

23

  *Knapp v. Leonardo*
24   46 F.3d 170 (2d Cir. 1995)      11

25   *Laboa v. Calderon*
    224 F.3d 972 (9th Cir. 2000)      9, 22, 23

26

  *Lacy v. Lewis*
27   123 F.Supp.2d 533 (C.D. Cal. 2000)      17

28

**TABLE OF AUTHORITIES  (continued)**

Page

*Manson v. Brathwaite*
432 U.S. 98 (1977)                                          20, 21

*Marshall v. Taylor*
395 F.3d 1058 (9th Cir. 2005)                                 18

*Miller v. Eklund*
364 F.2d 976 (9th Cir. 1966)                                   6

*Miller v. Keeney*
882 F.2d 1428 (9th Cir. 1989)                                9, 24

*Minnick v. Mississippi*
498 U.S. 146 (1990)                                            8

*Park v. California*
202 F.3d 1146 (9th Cir. 2000)                                 23

*People v. Jackson*
92 Cal.App.3d 899 (1979)                                      11

*People v. Marsden*
2 Cal.3d 118 (1970)                                           12

*People v. Scott*
91 Cal.App.4th 1197 (2001)                                    16

*People v. Windham*
19 Cal.3d 121 (1977)                                          16

*Pitchess v. Superior Court*
11 Cal.3d 531 (1974)                                          14

*Rhode Island v. Innis*
446 U.S. 291 (1980)                                            8

*Schmerber v. California*
384 U.S. 757 (1966)                                            8

*Simmons v. United States*
390 U.S. 377 (1968)                                           19

*Smith v. Robbins*
528 U.S. 259 (2000)                                            9

*Strickland v. Washington*
466 U.S. 668 (1984)                                        9, 22, 24

*United States v. Bohn*
890 F.2d 1079 (9th Cir. 1989)                                  7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**  (continued)

Page

*United States v. Burnett*
16 F.3d 358 (9th Cir. 1994) ............................................. 10

*United States v. Caruso*
358 F.2d 184 (2d Cir. 1966) ............................................. 6

*United States v. Edwards*
415 U.S. 800 (1974) ............................................. 6, 8

*United States v. Harrison*
213 F.3d 1206 (9th Cir. 2000) ............................................. 7

*United States v. Mayo*
646 F.2d 369 (9th Cir. 1981) ............................................. 24

*United States v. McKenna*
327 F.3d 830 (9th Cir. 2003) ............................................. 17

*Williams v. Taylor*
529 U.S. 362 (2000) ............................................. 6

*Yarborough v. Gentry*
540 U.S. 1 (2003) ............................................. 9

**Statutes**

28 United States Code
        § 2254 ............................................. 6
        § 2254(d)(1) ............................................. 6
        § 2254(d)(2) ............................................. 6

California Penal Code
        § 954 ............................................. 22
        § 995 ............................................. 13
        § 12001, subd. (b) ............................................. 10
        § 12022.53 ............................................. 10
        § 12022.53, subd. (a) ............................................. 10
        § 12022.53, subd. (b) ............................................. 10