IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANDRE TOLIVER,

    Petitioner,

  v.

A. J. MALFI, Warden,

    Respondent.

                                   /

No. C 07-2744 WHA (PR)

**DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**

      This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

**STATEMENT**

      A jury convicted petitioner of six counts of robbery. *See* Cal. Penal Code 211. With sentencing enhancements, he was sentenced to prison for forty-five years and four months. His conviction was affirmed on direct appeal by the California Court of Appeal and the California Supreme Court denied review. Petitioner's state habeas petitions also were denied.

///

///

///

# DISCUSSION

**A.  STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, which in this case is that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.   ISSUES PRESENTED**

Petitioner was convicted of having committed six armed robberies (Opinion of Court of Appeal of California at 1).[1] Two of the robberies were of the same Round Table Pizza restaurant, two others were of the same Radio Shack Store, one was of a Chevron station, and one was of a Payless Shoe Source store (*id.* at 2-6). All of the robberies were committed in daylight by a person who pointed what appeared to be a gun at an employee and demanded money (*ibid.*).

As grounds for federal habeas relief, petitioner asserts that: (1) the seizure at the jail of his clothing violated his right to an attorney, which he had invoked; (2) his trial and appellate counsel were ineffective in not raising issue one and a Fourth Amendment issue with regard to the seizure of his clothing; (3) the evidence was insufficient to support the gun-use enhancements; (4) his right to represent himself was violated; (5) his due process rights were violated by the trial court's refusal to suppress a line-up identification; (6) trial counsel was

---

[1] Because the record lodged in support of respondent's answer is not labeled with exhibit numbers – for instance, the opinion of the Court of Appeal of California is simply labeled "Opinion of the California Court of Appeal" – citations in this order cannot be to exhibits, as is usual. The court of appeal opinion will be cited hereafter as "Opinion." For the same reason the court reporter's transcript will be cited as "RT," and the trial court file supplied by the clerk on state court appeal (the clerk's transcript) will be cited as "CT."

3

ineffective in not moving to sever the counts; and (7) trial counsel was ineffective in not moving to strike his second "three strikes" conviction.

### 1. Clothing

In the early morning hours of November 10, 2000, petitioner was arrested for assaulting a police officer, possession of narcotics, and violation of parole (RT, Vol. 1 at 39, 41). At around 3:30 pm an officer told him he would have to be in a lineup (*id.* at 86). Petitioner said he wanted to call an attorney, so he was allowed to leave his cell and went towards a phone he could use (*id.* at 42). The officer seized the clothing petitioner had been wearing (*id.* at 86).

Petitioner's contention that the seizure of the clothes violated his right to an attorney is presumably based on *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (suspect who expresses desire to have counsel present during custodial interrogation not subject to further interrogation until counsel is made available). It fails for a number of reasons. First, there is no basis in the record for concluding that the seizure occurred after, rather than before, petitioner's reference to an attorney.[2] Secondly, petitioner did not unequivocally invoke his right to counsel, the record showing only that he asked to call an attorney. *See Davis v. United States*, 512 U.S. 452, 459-62 (1994) (suspect must unambiguously request counsel; "Maybe I should talk to a lawyer" insufficient). Thirdly, seizure of physical evidence – or the demand for it on the part of the police – does not amount to interrogation as that term is used in *Edwards*. *See United States v. McClellan*, 165 F.3d 535, 544 (7th Cir. 1999) (consent to search given after defendant requested counsel, and fruits of that search, need not be suppressed).

For these reasons, the rejections of this claim by the state appellate courts were not contrary to, or unreasonable applications of, clearly established United States Supreme Court authority.

///

---

[2] Petitioner's motion for an evidentiary hearing was denied because he failed to show that he attempted to develop the facts in state court but was prevented from doing so, a prerequisite for an evidentiary hearing in federal court. *See Hutchison v. Bell*, 303 F.3d 720, 747 (6th Cir. 2002) (requiring petitioner to demonstrate "sufficient diligence")." The denial was without prejudice to renewing the motion with a showing of due diligence, but petitioner has not renewed the motion.

4

### 2. Sufficiency of Evidence -- Gun-Use Enhancements

The jury found that petitioner had used a firearm in all but one of the offenses (Opinion at 1). Petitioner argues that it was a BB gun, hence not a firearm (Pet. 6A). There was, however, testimony at trial as to each count that the robber used a gun, except as to the count on which the jury found the gun use allegation not to be true, the Chevron robbery (RT, Vol. 1 at 194-95, 229-30; Vol. 2 at 287-94, 400-02, 408-09). There was no evidence to support petitioner's contention that it was a BB gun. Two witnesses familiar with firearms testified that the guns used in the robberies were real guns (RT, Vol. 1 at 252; Vol. 2 at 315-18).

The Ninth Circuit has held, applying a similar federal law, that a witness's testimony that a robber used "a gun" is sufficient to support a jury verdict that a "firearm" was used. *United States v. Harris*, 792 F.2d 866, 868 (9th Cir. 1986); *see also United States v.* Taylor, 54 F.3d 967, 975-76 (1st Cir. 1995) (same); *Parker v. United States*, 801 F.2d 1382, 1384-85 (D.C. Cir. 1986) (same). There was sufficient evidence to support the gun-use enhancements. The state courts' rejections of this claim were not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### 3. *Faretta* Claim

Petitioner contends that his rights under *Faretta v. California*, 422 U.S. 806 (1975), were violated when the trial court denied his motion to represent himself.

The California Court of Appeal set out the factual background:

> In a pretrial hearing on November 26, 2001, defense counsel informed the court that if his counteroffer to the prosecution to resolve the case was rejected, defendant wished to represent himself. Defense counsel also relayed defendant's request for a reduction in bail due to his mother's liver disease. The court asked defendant if he wanted to fire defense counsel and represent himself. The court advised him not to do that and that his request for bail was independent of his request for self-representation: "One is not dependent upon the other, Mr. Toliver. It's not 'I'll represent myself if you reduce my bail.' They're all independent of each other. And representing yourself is simply not a good idea. [¶] Is this a career criminal case?" When the district attorney answered in the affirmative, the court stated: "Then it is a very, very bad idea. Don't do that, Mr. Toliver. Whatever you do, don't do that." The record does not contain any further colloquy between defendant and the court but indicates that defense counsel and defendant conferred, whereupon the matter was concluded. The clerk's minutes indicate that defendant's request for bail reduction was denied.
> ///

5

///

On January 28, 2002, defendant filed a *Marsden* [FN4. *People v. Marsden* (1970) 2 Cal.3d 118.] motion. The court held a hearing on the motion. Defendant explained that he was unable to agree with defense counsel, did not get along with him or trust him, and counsel had not filed a section 995 motion. Defendant further complained that counsel made statements in court that defendant was willing to enter a plea bargain. Defense counsel explained that during plea negotiations, he informed the court that defendant was willing to admit two of the charged robberies and that the court had offered a sentence of 26 years and 8 months, based on consecutive sentencing for two armed robberies. Counsel further explained that he had not filed the section 995 motion because defendant asked him to make that motion before the preliminary hearing. The issue in that motion pertained to identification; counsel was exploring that issue with two experts and was considering whether to call them at trial. Defense counsel further explained that he did not find any viable section 995 issues.

Defendant then argued that counsel failed to follow up on information pertaining to the actual perpetrator of the robberies. Defense counsel explained that the individuals mentioned by defendant had not been identified by any of the witnesses to the robberies, that he recently hired a new investigator who had already met with defendant, and that he was going to follow up on the issue, but given the positive identifications of defendant by the majority of the witnesses alleged to have been robbed, he did not hold out much hope on the issue.

The court denied the motion, reasoning that there was no conflict, that defense counsel was competent, and that his investigator was working on the issue of identification.

Defendant filed another *Marsden* motion on November 14, 2002. At the hearing, defendant complained that counsel was trying to convince him to take a 30-year deal or risk a 60-year term. He also argued that counsel had visited him only once since the last court date in order to tell him he rescheduled a court date, had not given him copies of search warrants and had not moved to suppress the lineup identification. Defense counsel explained that this was a serial robbery case based on eyewitness identifications and that he planned to make an in limine motion to suppress the identifications. He also informed the court that he asked the district attorney for copies of any search warrants, but that he was not aware of any. The trial court denied the motion, finding that defense counsel had no duty to "spin his wheels" on pointless matters or to file frivolous motions.

On January 13, 2003, the matter was set for jury trial. Defendant filed another *Marsden* motion. He complained that defense counsel had made no effort to resolve their differences, that he had not visited him or investigated any of the matters he requested. Defense counsel explained that he visited defendant a couple of times in jail, but not since the previous *Marsden* motion. His investigator made several attempts to speak with defendant and was investigating a potential mistaken identity defense in the case. When the court denied defendant's motion, he told the court that he wanted to represent himself. The court took defendant's request under advisement and continued the matter for three days.

On January 16, 2003, defendant told the court that he wished to represent himself, "If I can't get another attorney...." The trial court denied the motion, finding that his motion to represent himself was untimely, as it was made on the

> eve of trial and that it was an equivocal request because it was made immediately after and in response to the court's denial of his *Marsden* motion. Defendant then requested a 90-day continuance to retain a private attorney. The court denied the request, finding that it was untimely. The court noted that the case had been pending since 2000 and there had been ample time for defendant to make his requests (Opinion at 6-8).

The court of appeal held that petitioner's *Faretta* rights were not violated as to either request to represent himself. As to the first request, the one on November 26, 2001, the court found that the request was equivocal because he "conditioned his request on whether his counteroffer to resolve the case was rejected," and because he was under the impression that his request to represent himself and his request for bail reduction were intertwined (Opinion at 9). As to the second motion, on January 16, 2003, the court found that the motion was untimely and equivocal (*id.* at 10).

A criminal defendant has a Sixth Amendment right to self-representation. *Faretta v. California*, 422 U.S. 806, 832 (1975). But defendant's decision to represent himself and waive the right to counsel must be unequivocal, knowing and intelligent, timely, and not for purposes of securing delay. *Id.* at 835; *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994); *Adams v. Carroll*, 875 F.2d 1441, 1444 & n.3 (9th Cir. 1989). The requirement that the decision be expressed unequivocally serves two purposes: it ensures that the defendant does not inadvertently waive his right to counsel, *Meeks v. Craven*, 482 F.2d 465, 467 (9th Cir. 1973), and also prevents the defendant from taking advantage of the mutual exclusivity of the rights to counsel and self-representation, *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989). If a defendant equivocates, he is presumed to have requested the assistance of counsel. *Id.* The court considers "three factors to determine whether a request for self-representation is unequivocal: the timing of a request, the manner in which the request was made, and whether the defendant repeatedly made the request." *Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007). The determination whether a *Faretta* motion was unequivocal is a finding of fact, to which a federal habeas court must apply Section 2254(d)(2) (habeas relief unavailable as to findings of fact unless the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."). *Id.* at 884 (9th Cir.

2007).

As to the first *Faretta* motion, petitioner undoubtedly was equivocal; he tried to condition the motion both on the outcome of his bail reduction motion and on the prosecution's response to his offer to resolve the case (RT (11/26/01) at 1-2). Thus although the timing of this request was not such as to suggest equivocation, the manner of his making it was. The court of appeal's holding that the motion was equivocal was not an unreasonable determination of the facts in light of the evidence presented.

The second *Faretta* motion was untimely. The *Faretta* language describing Faretta's request to represent himself as having been made "weeks before trial," 422 U.S. at 835, is part of the holding of the Court, and thus is "clearly established Federal law, as determined by the Supreme Court of the United States," for purposes of relief under the current version of 28 U.S.C. 2254(d). *Moore v. Calderon*, 108 F.3d 261, 265 (9th Cir. 1997). After *Moore*, it is clear that *Faretta* clearly established some timing element, but the precise contours of that element are not clear, beyond the fact that requests made "weeks before trial" are timely. *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005). Because the Supreme Court has not clearly established when a *Faretta* request is untimely, other courts, including state courts, are free to do so, as long as they comport with the Supreme Court's holding that a request made "weeks before trial" is timely. *Ibid.* (holding that California court's decision was not "contrary to" clearly established Supreme Court law under 28 U.S.C. 2254(d) when it found that petitioner's *Faretta* request on the first day of trial before jury selection was untimely).

Here, the second *Faretta* motion was made on the day the case was called for trial, and although jury selection did not in fact start that day, but rather two days later, under the analysis adopted in *Marshall* the rejections of this claim by the state appellate courts were not contrary to, or unreasonable applications of, clearly established United States Supreme Court authority.

For these reasons, petitioner's *Faretta* claims are without merit.

**4.     LINEUP**

Petitioner contends that his due process rights were violated by admission at trial of a witness's identification of him as the person who robbed the Payless Shoe Source store. The

8

following are the facts of the lineup issue as set out by the court of appeal:

> On November 10, 2000, defendant was arrested on an unrelated matter. At the time of his arrest, defendant was wearing denim jeans with a Sean Jean logo on the right leg and a denim jacket. Davis, the victim of the Payless Shoe Source robbery, had given the police a description of the robber's clothing that included the distinctive Sean Jean jeans and a black jacket.
>
> A physical lineup was conducted in connection with the "fisherman hat" robberies on November 13, 2000. Defendant participated in the lineup. Sergeant Beal required that defendant wear the clothes in which he was arrested because the jeans were distinctive and the clothing matched the description given by Davis. Because a hat was worn during several of the robberies, Beal required that the individuals in the lineup wear a dark baseball cap.
>
> Beal and Officer Flemings picked five men from the Oakland City Jail who were similar in appearance to defendant. At the time of the lineup, defendant was 34 years old, six feet one inch tall and weighed 155 pounds. The other individuals chosen for the lineup were similar in height, but weighed more. Defendant, however, did not appear to be the thinnest in the lineup due to his clothing which made him appear heavier or similar to the others in stature and build. Defendant, a light complected African-American, had a complexion similar to two of the individuals in the lineup while the other three were of medium-to-dark complexion.
>
> Defendant moved to suppress the lineup, arguing that it was impermissibly suggestive because the other individuals in the lineup were dissimilar in appearance and his clothing was substantially similar to that worn by the suspect in one of the robberies. The trial court, after viewing a videotape of the lineup, denied the motion, finding that it was not impermissibly suggestive (Opinion at 10-11).

The court of appeal rejected this claim, saying:

> While requiring defendant to wear the jeans with the distinctive logo during the lineup did not result in the ideal procedure, the lineup was not unnecessarily suggestive.
>
> Davis, who was robbed at the Payless Shoe Source store just four days prior to the lineup, testified that he was certain that defendant was the man who robbed him when he selected him in the lineup. "Everything was familiar to me. The clothes he was wearing, the baseball cap. The way he stands. The way his facial appearance was. Everything. Besides, he walked with a limp, which he actually didn't do. Like he was trying too hard to limp at that time." In fact, Davis testified that he recognized defendant as the robber immediately as he was walking towards his position in the lineup, before he stopped and turned to face the audience. In sum, Davis's identification of defendant was not based solely on the distinctive clothing; defendant has failed to prove that the lineup was unduly suggestive. (See *People v. Harris* (1971) 18 Cal. App.3d 1, 5-6 ["The mere fact that defendant was wearing the same color pants worn by the robber did not make the lineup unfair"]; *People v. McDaniels* (1972) 25 Cal. App.3d 708, 711-712 [same].) (*id.* at 12-13).

"A conviction which rests on a mistaken identification is a gross miscarriage of justice."

9

*Stovall v. Denno*, 388 U.S. 293, 297 (1967). Procedures by which the defendant is identified as the perpetrator therefore must be examined to assess whether they are unduly suggestive. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). Due process protects against the admission of evidence deriving from suggestive pretrial identification procedures. *Id.* at 196. Identification testimony violates due process only if (1) a pretrial encounter is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and (2) the identification is not sufficiently reliable to outweigh the corrupting effects of the suggestive procedure. *Van Pilon v. Reed*, 799 F.2d 1332, 1338 (9th Cir. 1986). An identification procedure is impermissibly suggestive when it emphasizes the focus upon a single individual, thereby increasing the likelihood of misidentification. *Simmons v. United States*, 390 U.S. 377, 382-83 (1968). Reliability is the linchpin in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). To determine whether in-court identification testimony is sufficiently reliable, courts consider five factors: (1) the witness' opportunity to view the defendant at the time of the incident; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the witness at the time of the identification procedure; and (5) the length of time between the incident and the identification. *Id.* at 114; *Neil*, 409 U.S. at 199-200. These factors should be weighed against the corrupting effect of the suggestive identification itself. *Manson*, 432 U.S. at 114.

A reviewing court may assume suggestiveness and review reliability first. *Van Pilon*, 799 F.2d at 1339. That will be done here.

At the time of the robbery the witness had about five minutes to view the robber, and he was close to him (RT, Vol. 2 at 289-91, 322). The witness was calm, so was not distracted by fear (*id.* at 293-94). The first two factors, therefore, cut in favor of the identification being reliable. As to the third factor, the witness described the robber as being a medium-complected African-American man of about twenty-two to twenty-four years of age, black hair and brown eyes, 6 feet one to six feet two, 160-170 pounds, with a moustache and goatee (*id.* at 319). In fact, petitioner was a light-complected African-American man, thirty-four years old, six feet

10

1    one inch tall, weighing 155 pounds, and with the facial hair as described by the witness (*id*. at
2    75, 87, 90). The accuracy of the witness's prior description to police might best be described as
3    "fair," so this factor cuts neither one way nor the other.

4    The witness demonstrated a very high level of confidence in his identification at the
5    time it was made (*id.* at 334-37), and the lineup was only four days after the robbery (*id.* at
6    319). The fourth and fifth factors therefore support the reliability of the identification.

7    In summary, four of the factors support reliability, and one is roughly neutral or slightly
8    favors petitioner. Having considered the factors set out in *Manson*, the Court concludes that the
9    identification was reliable, and thus that despite its arguable suggestiveness, its admission did
10   not violate due process.

11   Because admission of the witness's identification did not violate petitioner's due process
12   rights, the rejections of this claim by the state courts' were not contrary to, or an unreasonable
13   application of, clearly established United States Supreme Court authority.

### 5.   INEFFECTIVE ASSISTANCE OF COUNSEL

15   Petitioner contends that his trial counsel was ineffective in (1) not raising the claim that
16   seizure of his clothing violated his right to counsel and his Fourth Amendment rights; (2) not
17   moving to sever the counts; and (3) not moving to strike the second of his prior "three strikes"
18   convictions. He also asserts that appellate counsel was ineffective in not raising on appeal the
19   claims regarding seizure of his clothing.

20   In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner
21   must show two things. First, he must show that counsel's performance was deficient, *i.e.*, that it
22   fell below an "objective standard of reasonableness" under prevailing professional norms.
23   *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Secondly, he must establish that he
24   was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability
25   that, but for counsel's unprofessional errors, the result of the proceeding would have been
26   different." *Id.* at 694. A reasonable probability is defined as a probability sufficient to
27   undermine confidence in the outcome. *Ibid.* Judicial scrutiny of counsel's performance must
28   be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls

11

within the wide range of reasonable professional assistance. *Id.* at 689. A difference of opinion as to trial tactics does not constitute denial of effective assistance. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984).

### a. Trial Counsel

Petitioner contends that his trial counsel was ineffective in not moving to suppress evidence on the grounds that police officers seized his clothing from him at the jail in violation of his right to counsel and without a warrant. It has been determined above that the seizure did not violate petitioner's right to counsel, and "the Fourth Amendment has no applicability to a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 536 (1984). It thus would have been futile for counsel to make the motions petitioner suggests, and counsel was not ineffective in failing to make them. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (trial counsel cannot have been ineffective for failing to raise a meritless motion).

Petitioner also contends that trial counsel was ineffective in not moving to sever the counts. This claim was raised on direct appeal. The California Court of Appeal held that under California law a severance motion would have been futile (Opinion at 13-14). That holding on a matter of state law is binding on this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (state court's interpretation of state law, including one announced on direct appeal of challenged conviction, binds federal court sitting in habeas corpus). Counsel's failure to make such a motion therefore could not have been ineffective assistance. *See Juan H.*, 408 F.3d at 1273.

Finally, petitioner contends that counsel was ineffective with regard to application of the "three strikes" law at his sentencing. He contends that counsel should have asked the sentencing court to strike the prior "strike" offense that was used to enhance his sentence. As respondent points out, counsel in fact did do so (RT, Vol. 3 at 771). And to whatever extent petitioner may be claiming that counsel should have made a facial challenge to the three-strikes law itself under either state or federal law, such a motion would have been futile. *See, e.g.*, *Ewing v. California*, 538 U.S. 11, 24-28 (2003) (California's 3-strikes law constitutional on its face); *People v. Reed*, 33 Cal. App. 4th 1608 (1995) (rejecting ex post facto challenge).

Counsel was not ineffective on this ground.

Petitioner's right to effective assistance of counsel was not violated, so the rejections of these claims by the state courts were not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### b.     Appellate Counsel

Petitioner contends that appellate counsel was ineffective in failing to raise his contentions that his right to counsel and his Fourth Amendment rights were violated when police seized his clothing at the jail.

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller v. Keeney*, 882 F.2d 1428, 1434 n.10 (9th Cir. 1989). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *Miller*, 882 F.2d at 1434. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason -- because he or she declined to raise a weak issue. *Id.*

As discussed above, the claims regarding the seizure of petitioner's clothing are without merit, so counsel's failure to raise them on appeal was not ineffective. Because counsel was not ineffective, the state courts' rejections of these ineffective assistance claims were not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September  22 , 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.07\TOLIVER2744.RUL2.wpd

13

**United States District Court**
For the Northern District of California